

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 354 | **DATE** | 4/4/2002 |
| **CASE TITLE** | Estate of Charles Slack vs. Laborer's Welfare and Pension Fund | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Apostal's petition is totally at odds with the Plan and the Fund created thereto. Accordingly his petition is denied with prejudice and this action is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 8 – 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/4/2002 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ESTATE OF CHARLES SLACK, Deceased )
)
------------------------------------)
LOUIS G. APOSTAL, )
)
          Petitioner, )
)
v. )   No. 02 C 354
)
LABORER'S WELFARE AND PENSION )
FUND,[1] )
)
          Respondent. )

## MEMORANDUM OPINION AND ORDER

This portion of a state court probate proceeding, a "Petition for the Issuance of a Citation To Recover Assets" ("Petition") in Case No. 00 P 3016 in the Probate Division of the Circuit Court of Cook County, has been removed to this federal court by Laborers' Pension Fund ("Fund") on federal question grounds--as posing an issue under ERISA, more specifically its 29 U.S.C. §1132(a).[2] Fund claims that the effort by Louis Apostal ("Apostal"), acting as Supervised Administrator of the Estate of presumptively adjudicated decedent Charles Slack ("Slack"), to recover pension benefits allegedly owed to Slack as a Fund participant is completely preempted by Section 1144.

---

    [1] Though this is the name set out in the Petition, respondent's correct name is "Laborers' Pension Fund."

    [2] Further citations to ERISA provisions will simply take the form "Section -," using the Title 29 numbering rather than ERISA's internal section numbering.

At this Court's request the parties have submitted memoranda on what they agree is a question of first impression, not having been addressed in any reported decision anywhere. Here are the circumstances in brief summary:

1. Slack's brother-in-law Robert Marshall has tendered an affidavit stating that Slack dropped out of sight, so far as he and his wife (Slack's sister) were concerned, when Slack left their home in 1989.

2. On the other hand, Fund's Trustees regularly require all pensioners (on not less than an annual basis) to certify that they are currently receiving their monthly pension checks and are endorsing them personally for their own use. Ex. B to Fund's Notice of Removal (a photocopy of which is attached to this opinion as Ex. 1) reflects that on February 8, 1992 Slack signed and returned a notarized certificate to Trustees confirming those things.

3. When Slack's sister advised Fund later in 1992 that Slack was missing, Fund had investigators try to trace him or alternatively to seek evidence of his death. When that search turned up nothing, Fund stopped mailing any further monthly benefit checks.

4. In 2000 an estate was opened for purposes of seeking a declaration of Slack's presumptive death under Illinois law, as exemplified by Estate of Morrison v.

2

Rosewell, 92 Ill.2d 207, 212, 441 N.E.2d 68, 71 (1982)(citations to a host of cases are omitted from this quotation):

> The presumption of death is raised where (1) a person has disappeared or is continuously absent for seven years from his home without explanation, (2) those persons with whom he would likely communicate have not heard anything from him or about him, and (3) a diligent search has been made at his last known place of abode without obtaining information that he is alive. The presumption of death needs to be established only by a preponderance of the evidence, although it is a rebuttable presumption that can be disproved by evidence showing the person presumed to be dead is alive.

That resulted in an August 24, 2000 order by a judge of the Probate Court (a photocopy is attached to this opinion as Ex. 2) that declared Slack's presumed date of death to have been August 31, 1996.[3]

As Apostal would have it, the Probate Court order is conclusive: Because the order says that Slack was presumed dead as of August 31, 1996, Apostal as administrator assertedly stands in his shoes (wherever they may be) and is therefore entitled to

---

[3] That order seems puzzling in light of the notarized response from Slack referred to in paragraph 2, for only 4-1/2 years rather than the presumptive common law seven year period had elapsed since the date of that response. It seems doubtful (at a minimum) that the information about that sworn response was made known to the state court judge--after all, the common law rule is only presumptive, and the last sentence just quoted from Morrison says that "evidence showing the person presumed to be dead is alive" overcomes the presumption. But as this opinion later makes plain, this Court need not ultimately resolve the question whether the Probate Court order was mistakenly entered.

3

the 50 months of pension payments that purportedly accrued after the last one signed for by Slack in June 1992. For its part, Fund responds by urging the preemptive force of Section 1144 as assertedly trumping any effect to be ascribed to the state's common law doctrine of presumed death. From Fund's perspective, Apostal "seeks to create a new survivor's benefit not available under the Plan, a benefit payable to an estate." This Court finds neither of those positions persuasive as framed, but it is nonetheless clear (1) that the removal is well-founded because ERISA is squarely implicated and (2) that familiar ERISA principles spell doom for Apostal's effort.

> Section 1144(a) states a sweeping rule of ERISA preemption:
>
> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

And that provision has consistently been given an expansive reading by the United States Supreme Court and all lower courts--see, e.g., Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987), which upheld the removal of an action that was framed in state common law terms but was still found to "relate to [an] employee benefit plan." Just as was true in Metropolitan Life, then, the effect of Section 1144(a) here is that Apostal's Petition must be viewed as an action--here purportedly on behalf

4

and in the stead of a plan beneficiary--to recover benefits as authorized by Section 1132(a), so that Fund's removal of the Petition to this federal court was solidly grounded.

But that does not answer the question before this Court, for Section 1144(a) does not necessarily mean that there is no room for the application of state common law doctrines that do not run afoul of ERISA--see, e.g., Yarde v. Pan Am. Life Ins. Co., reported in table at 67 F.3d 298 (4th Cir. 1995), cited at Apostal Mem. 3.[4] And neither side has thought the problem through.

What Fund's counsel has plainly overlooked is that his argument--that Section 1144(a) provides the conclusive answer because Apostal is seeking payment of a death benefit not provided by the terms of the Plan (rather than seeking to recover unpaid pension benefits)--has to be bottomed on the premise of Slack's death back in 1992. And of course that has not been established in factual terms, either by the Probate Court order or in any other way. As for Apostal's counsel, what he has

---

[4] Although Yarde also addressed a state presumption-of-death doctrine, it did so in a totally different context from the present one: It simply confirmed that a plan's death benefit would not be paid until the covered employee's death had been established, and that establishment could take the form of a presumption in the absence of actual proof of death. That easily-reached and straightforward ruling really has no bearing on the critically different situation posed here. And that factor of its true nonrelevance is heightened by the fact that even the citation of such unpublished dispositions is disfavored by the originating court itself--see Fourth Circuit Rule 36(c).

5

plainly overlooked (even apart from the dubious effect of a Probate Court order that speaks only of Slack's presumed date of death in 1996, and that appears to have been entered without notice to Fund, which could have offered evidence to rebut the presumption and presumably thus to prevent entry of the order--see n.3[5]) is that Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111, 115 (1989) and its host of progeny teach that benefit eligibility decisions such as this one, made by employee benefit fund administrators vested with broad discretion by their employee benefit plans, must be upheld unless they are both "arbitrary and capricious."

In this instance both the applicability and the application of the Firestone Tire principle are plain indeed:

1. Section 8.3 of the Laborers' Pension Plan ("Plan") establishing Fund vests in Fund's Trustees the kind of discretion that every well-drafted plan has included since Firestone Tire (if not before that):

> The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan; and decisions of the Trustees shall be final and binding on all

---

[5] This opinion is not hinged on those likely deficiencies, for that would do nothing more than to postpone Apostal's claim to a later date--say seven years after June 1992--when another (and this time nonattackable) Probate Court order could be obtained and a substantially larger number of months of claimed "pension payments" could then be sought to be recovered by Apostal.

6

parties.

2. As Ex. 1 to this opinion reflects, Trustees have decided to construe the provision of Plan §8.5(c) that "[p]ension payments shall end with the payment for the month in which the death of the Pensioner occurred" as making Trustees "required to see that every retired employee is personally receiving and endorsing his pension checks...."

There is clearly no way in which the just-stated interpretation of the Plan's provision for the payment of pension benefits to retired employees can be viewed as either arbitrary or capricious, let alone both (if those standards differ). It is impossible to quarrel, under the principles that are applicable to employee benefit plans, with a position in which Trustees thus stand ready to pay Slack all of the benefits to which he is entitled as and when he lays claim to them.

After all, any claim that is made by Apostal (or anyone else) on the premise that Slack is presumptively dead necessarily poses the possibility that if Slack actually died <u>before</u> that presumptive date, what is being sought by the claimant is indeed a death benefit not authorized by the Plan--and that possibility is clearly enough, under the <u>Firestone Tire</u> doctrine, to require approval of the Trustees' interpretation of the Plan. It must be remembered that Trustees owe fiduciary obligations to <u>all</u> of Fund's beneficiaries and potential beneficiaries--and in those

7

terms Fund's Mem. 7 has it right:

> Only Charles Slack himself has a claim to those funds; otherwise the Trustees retain full right, title and interest to such funds for the purpose of paying benefits to other living pensioners and surviving spouses.

## Conclusion

Apostal's petition is totally at odds with the Plan and the Fund created pursuant thereto. Accordingly his petition is denied with prejudice, and this action is dismissed.

*(signature)*
Milton I. Shadur
Senior United States District Judge

Date: April 4, 2002

8



**WELFARE AND PENSION FUND**

# LABORERS' PENSION FUND

1515 SOUTH HARLEM AVENUE
FOREST PARK, ILLINOIS 60130

TELEPHONE: 1-708-771-7910
PENSION FAX NO. 1-708-771-0305

EXHIBIT B

BOARD OF TRUSTEES
ADMINISTRATOR
JAMES R. MURPHY
TREASURER
JOSEPH A. LOMBARDO, JR.
SECRETARY
SAM VINCI
FOR LABOR
FRANK CARUSO
ROBERT J. KELLY
MICHAEL LAZZARETTO
JOSEPH A. LOMBARDO, JR.
VINCENT SOLANO
FRANK M. ZIEMANN
FOR EMPLOYERS
RAYMOND R. BECKER
WILLIAM O. KINAST
ROBERT J. MADDEN
PATRICK T. NASH
ROGER T. VIGNOCCHI
SAM VINCI

Dear Pensioner:

As Trustees of your Pension Fund, we are required to see that every retired employee is personally receiving and endorsing his pension checks, and that these checks are arriving promptly and regularly, and that he is not engaging in work regularly performed by building trades craftsmen or any other work which is or may be under the jurisdiction of the Laborers' District Council of Chicago and Vicinity.

Will you kindly complete the bottom section of this form, indicating whether you are receiving your pension benefit checks regularly and endorsing them personally. Please also indicate the address to which your checks should be sent and if you are not endorsing them, explain why. In addition, please indicate whether you are working in prohibited employment.

It is important that you complete and return this form. In the absence of a prompt response from you, we would have to take further action to make our records in this regard complete. This may delay your future pension benefit payments.

A return envelope is enclosed for your convenience in returning this form.

A copy of this letter is also enclosed for your personal records.

(This form must be notarized by a Notary Public)

Sincerely yours,

By _James R. Murphy_
Fund Administrator

EXHIBIT 1

I certify to the following: (check one)

Are you regularly receiving your monthly pension checks from the Laborers' Pension Fund?  YES [✓]  NO [ ]

Are you endorsing your pension checks personally for your own use?  YES [✓]  NO [ ]

Are you engaging in work regularly performed by building trades craftsmen or any other work which is or may be under the jurisdiction of the Laborers' District Council of Chicago and Vicinity?  [ ]  [✓]

Signed: _Charlie Black_ (Retired Employee)   Date: 2-8-92

State of _____ )
County of _____ ) SS

Personally came before me this 8th day of Feb, 19 92, the above named _____ to me known to be the person who executed the foregoing and acknowledged the same.

_Brenda Boyd_
Notary Public

My commission expires 6-15, 19 94


OFFICIAL SEAL
BRENDA BOYD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXP: 6/15/94

EMPLOYER PARTICIPANTS—
Builders' Association, Employing Plasterers' Association, Underground Contractors' Association, Mason Contractors' Association, Concrete Contrac Association, Wrecking Contractors, Concrete Products Employers, Lake County Illinois Employers, Illinois Road Builders Association, Bridge and Highway Structural Builders, i.e. all those who employ Laborers Engaged in the Building and Construction Industry.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PROBATE CAL 11

FILED
AUG 24 2000
AURELIA PUCINSKI
CLERK OF CIRCUIT COURT

Estate of Charles

v.

Slack, deceased

0000038.0056

2000
No. 00 P 3016
Docket 067
Page 565

## ORDER

This cause coming on to be heard upon Petition of Robert Marshall for Letters of Office on Presumption of death, & Petitioner having complied with all Statutory requirements, due notice being given to all interested parties & the court being fully informed in the premises

IT IS HEREBY ORDERED
(1) That Charles Slack has been presumed to have deceased as of August 31, 1996.

CIRCUIT COURT PROBATE DIV.
ENTERED
AUG 24 2000
JUDGE JEFFREY A. MALAK #0215

Atty. No.: 54066
Name: JOHN MORRONE
Atty. for: Robert Marshall
Address: 7110 W. 127th St #250
City/State/Zip: Palos Heights, IL 60463
Telephone: 708-361-0070

8/24/2000

ENTER:
Judge
Judge' No. 0215

AURELIA PUCINSKI, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, IL

EXHIBIT B

EXHIBIT 2